# SUPREME COURT.

ELIZABETH PATTERSON agt. JANE W. McCUNN and others.

In actions for the *partition* of real estate the right of the plaintiff to be an *owner* should be clear to warrant the court to take the custody of the property out of the possession of those having an apparently valid title. Where the executors and trustees are vested with that right under a will, while the claim of the plaintiff, as an heir-at-law, is doubtful and uncertain, her motion for an *injunction and receiver* pending her action for partition will be denied.

Where application is made in such action to remove the trustees on the ground of incompetence or improvidence, upon affidavits founded in a great part on information and belief, which are unequivocally denied on behalf of the trustees, there is no propriety in granting the motion on such a state of the testimony, nor in trying such a question in the action on conflicting affidavits.

*New York Special Term, August,* 1873.

THIS action is brought to obtain partition of certain real estate of the late John H. McCunn, deceased, upon the ground that certain provisions of his will are inoperative and void. The prayer of the complaint is for an injunction and receiver and other relief. The injunction was granted, attended by the usual order to show cause.

CHRISTOPHER FINE, *counsel for plaintiff*, stated as facts that John H. McCunn died on the 6th of July, 1872, leaving a will, in which he, *first;* directs payment of his debts; *second,* directs the erection of a tomb in Ireland; *third,* bequeaths the house in which he lived at the time of his death, together with the furniture, plate, &c., to his wife; *fourth,* gives his property in Ireland to his two brothers, James and Thomas; *fifth,* " gives, devises and bequeaths to his executor

and executrix, and the survivor of them, all the rest, residue and remainder of his estate, both real and personal, in America, in trust," and directs that "they shall take possession of the same, and collect the rents, issues and profits thereof; and out of the proceeds of the same, *for six years* after my death," shall pay certain bequests therein named; and further directs that such bequests "shall continue for the said term of six years after my death;" and further directs that "at the end of six years, as aforesaid, or within a reasonable time thereafter, the said executors shall sell and dispose of all my estate, both real and personal," and after the "sale" that they shall divide the "proceeds of the same" amongst his "heirs or next of kin, or to those whom he may direct."

Then follows his direction how the "proceeds" of the sale of his said property may be divided after the said six years. *Sixth*. He nominates as his executor and executrix Thomas and Jane W. McCunn.

To the body of the will the testator adds two codicils, in the first of which he, 1st, increases certain annuities mentioned in the fifth clause, and makes them payable during the lives of three persons, namely: Mrs. Long, Mrs. Barnet and Mrs. Lecky; 2d, devises a small farm in New Jersey to his sister Jane; 3d, again increases bequests to Mrs. Long and Mrs. Barnet, mentioned in the fifth clause of the will, from $3,000 to $5,000, and adds that, "if my aunt, Eliza Lecky, is alive at the distribution of my estate, or when her annuity ceases, I then give her a legacy of $1,000, in addition to the annuities she may have had."

In the second codicil he bequeaths to John McC. Gano and Jane W. Gano "$500 per year until the final distribution of my estate;" and at such final distribution he gives to each of the said last named parties, in lieu of the $500, $5,000 absolutely. He then nominates James M. Gano as one of the executors.

The plaintiff is one of the daughters of Mark McCunn, a half-brother of the deceased, on the paternal side, and claims

Patterson agt. McCunn.

as an heir-at-law. The plaintiff claims that the fifth clause of the will and all legacies and bequests to be paid therefrom are void, because, among other reasons, the absolute power of alienation of the real estate and its proceeds and the ownership of the personal property is illegally suspended, being suspended for at least the absolute and fixed period of six years and even longer, in the discretion of the trustees, and may be for a longer period than two lives in being at the creation of the estate, and that thus the power of alienation is suspended, *not upon lives,* but upon a *fixed period of time,* and that the first codicil adds a further suspension of three lives in being, &c.

The plaintiff brings this action, under the statute of 1853, authorizing an heir out of possession to prosecute for partition, &c., and also in contemplation of the general equity powers of the supreme court.

On the first point, in relation to the power to construe a will, and in connection therewith to appoint a receiver and order an accounting and direct a partition, and, if necessary, a sale, is inherent in a court of equity, cited *Scott* agt. *Gurnsey* (60 *Barb.,* 163, 165, 167, 173, 178; *affirmed in* 48 *N. Y..,* 106 [*A. D.* 1871]); *Story's Eq. Jur.* (§§ 646 *to* 648). And in relation to the provisions of the laws of 1853, *cited* that statute, §§ 1, 2; *also* 2 *Crary's Special Proc.,* 96, 117.

*Second.* In relation to the trust sought to be created by the fifth clause of the will being void, because it unlawfully suspends the power of alienation of the real estate, and also the absolute ownership of the personal property of the deceased, cited the enactments of 1 *Rev. Stat.,* 672 (*Edmonds'* ed.; or, 3 *Rev. Stat.,* 11 [5*th ed.*], §§ 14, 15, 16, 21, 22, 41, 44, 55, 75, 79, 82, 84); *Jennings* agt. *Jennings* (7 *N. Y.,* 547); *Hawley* agt. *James* (16 *Wend.,* 61, 121); *Amory* agt. *Lord* (9 *Wend.,* 404, 415, 416); *Taylor* agt. *Gould* (10 *Barb.,* 388, 398, 400); *Yates* agt. *Yates* (9 *Barb.,* 329, 338, 339, 341, 344, 346, 347); *Costar* agt. *Lorillard* (14 *Wend.,* 265, 312); *Bascom* agt. *Albertson* (34 *N. Y.,* 584, 609 *to* 612); *Williams* agt. *Wil-*

*liams* (8 *N. Y.*, 525); *Hawley* agt. *James* (5 *Paige*, 445); *Amory* agt. *Lord* (5 *Seld.*, 403); *Knox* agt. *James* (47 *N. Y.*, 390, 396); *Booth* agt. *Field* (2 *B. & Ald.*, 564); *Schettler* agt. *Smith* (41 *N. Y.*, 328); *De Kay* agt. *Irving* (5 *Denio*, 646, 652); *McSorley* agt. *McSorley* (4 *Sand. Ch.*, 414, 416); *McSorley* agt. *Wilson* (4 *Sand. Ch.*, 515, 525); *Field* agt. *Field* (4 *Sand. Ch.*, 528, 546, 551); *Moore* agt. *Moore* (47 *Barb.*, 257, 258, 260); *Brown* agt. *Evans* (34 *Barb.*, 595, 605).

*Third.* There is no power in the court to preserve or modify the trust, but the whole trust and property and legacies mentioned in the fifth clause fails (3 *R. S.*, *p.* 22, § 84; *Hawley* agt. *James*, 16 *Wend.*, 65, 121, 122, 164, 166, 174, 175, 176; *Costar* agt. *Lorillard*, 14 *Wend.*, 265, 312, 317; *Savage* agt. *Burnham*, 17 *N. Y.*, 561, 569, 570, 576; *Tucker* agt. *Tucker*, 5 *N. Y.*, 417, 418; *Morton* agt. *Morton*, 8 *Barb.*, 21; 4 *Kent's Com.*, 325, 337, 351, *and cases cited; Harrison* agt. *Harrison*, 36 *N. Y.*, 548; *Amory* agt. *Lord*, 4 *N. Y.*, 411, 419, 420; *Matter of Thomas Estate*, 1 *Tucker's Sur.*, 367, 370; 1 *R. S.*, 729, § 60; *Knox* agt. *James*, 47 *N. Y.*, 390, 399; *Mc-Sorley* agt. *Wilson*, 4 *Sand. Ch.*, 515 *to* 525; 3 *R. S.*, *p.* 16, § 55, *and page* 21, § 79, *p.* 28, § 148; *Post* agt. *Hover*, 33 *N. Y.*, 106, *id.*, 601; *McSorley* agt. *McSorley*, 4 *Sand. Ch.*, 414, 416; *Field* agt. *Field*, 4 *Sand. Ch.*, 528, 546, 551).

*Fourth.* The trustees are both beneficiaries under the will, and therefore cannot be trustees (*Costar* agt. *Lorillard*, 14 *Wend.*, 265, 322, 323; 3 *R. S.*, *p.* 21, § 79).

*Fifth.* No particular form of words or mode of expression is requisite to create a trust (*Fisher* agt. *Fields*, 10 *John.*, 494, 497; 1 *Redfield on Laws of Wills*, 174–176 [3 *ed.*], *and cases cited*).

*Sixth.* The half-blood take by descent equally with the whole blood (3 *R. S.*, *p.* 42, § 15 [5 *ed.*] ).

W. W. McFARLAND, *counsel for executors, defendants,* stated : The *first* and obvious observation upon this hearing

is that the relief prayed for, by way of injunction and receivership, cannot be granted without clear violation of the established rule that the merits of the cause cannot be tried upon a mere motion, and that the granting of the relief prayed for must be based upon a pre-judgment of the very merits of the action, anticipating final hearing and a disposition of the merits in advance upon a preliminary motion based upon affidavits. This, of itself, is a conclusive reason why the injunction should be dissolved and the application for a receiver denied.

*Second.* The proposition upon which the action is based is clearly erroneous. The objections urged to the will are these: 1st. That it is void for uncertainty; 2d. Because of an unlawful suspension of the power of alienation; 3d. Because there is an unauthorized provision for accumulation; and, 4th. Because certain of the beneficiaries are aliens.

*Third.* Before considering these several objections a general view of the will was taken to endeavor to ascertain the general and controlling intent of the testator touching the disposition of his estate. He intends that it shall all be converted into money, and, as money, divided in the prescribed proportion between certain designated persons, who may be regarded, therefore, as the primary objects of his bounty. The primary legatees are his widow and his two brothers, to whom his residuary estate is given; the widow taking one-half and the brothers each one-fourth. Out of this, however, is to be paid a legacy to each of three sisters, one aunt and two children of Dr. Gano, one of his executors. He has expressed a desire that the final distribution and division of his estate between these different legatees should be made *at the end of six years;* and not wishing to leave them unprovided for, in the mean time he has directed that certain advances should be made to them, in the way of annuities, until they come into the actual possession of the principal sum bequeathed to each. It is apparent, therefore, that the principal and controlling intention of the testator would, as the rules of law and the express statutes of the state require,

be carried into execution if the executors were held to take merely a power in trust for the purpose of sale and distribution to be made, regardless of the restriction as to time and as soon as the same could have been accomplished, provided there had been no suggestion as to the time to be occupied in the performance of this duty, and no provision intermediate made for the objects of his bounty. But the main and cardinal question in the premises is this, namely, what is the nature and quality of the estate taken by the trustees and the several beneficiaries?

*Fourth.* It is submitted, in the first place, that this is a will of personal property, pure and simple. It is to be dealt with as *a sum in money and nothing else* (2 *Story Eq. Jur.*, § 64, §§ 790, 1212, 1214; *Manice* agt. *Manice*, 43 *N. Y.*, 372; *Kane* agt. *Gott*, 24 *Wend.*, 658, 660; *Everett* agt. *Everett*, 29 *N. Y.*, 40; *Van Vechten* agt. *Van Vechten*, 8 *Paige*, 103, 128; *Bunce* agt. *Vandergrift*, 8 *Paige*, 37; *Craig* agt. *Leslie*, 3 *Wheaton*, 577, 578; *Fletcher* agt. *Ashburner*, 1 *Bro. Ch. Ca.*, 437; 1 *White & Tudor Leading Cases in Equity*, notes; *Phelps* agt. *Pond*, 23 *N. Y.*, 69).

*Fifth.* The fact that the testator has expressed a desire that that part of his property consisting of real estate should not be converted into money until after the expiration of six years must be manifest, upon a moment's reflection, that it can have no effect upon the general construction of the will, and does not render this clause of it void and defeat the main and general intent of the testator. In reference to well settled principles by which courts are guided in the interpretation of last wills and testaments, see *Darling* agt. *Rogers* (22 *Wend.*, 488); *Hobart's Reports*, 277; *Oxley* agt. *Lane* (35 *N. Y.*, 349); *Harrison* agt. *Harrison* (36 *N. Y.*, 547); *Schettler* agt. *Smith* (41 *N. Y.*, 341).

*Sixth.* By the fifth clause of the will, which gives rise to the present action, in substance, he gives the residuum of his estate to his executors to convert it into money and distribute the money; one-half to his wife and the other half equally

between his brothers, Thomas and James. This residuum, it is true, is charged with what may be regarded as certain temporary legacies and certain ultimate legacies, the recipients of both being the same persons. There is no future or expectant estate created; the executors are not to distribute or convey upon the happening of some future contingency or uncertain event. There is no estate created in either of the beneficiaries, subsequent to the testator's decease, but that which he has given to the trustees for their benefit is simply to be distributed or divided. The executors do not convey; they simply distribute and divide the money which has been given to them to distribute and divide. There is, therefore, a vested interest in these several beneficiaries from the instant of the testator's decease; the executors are charged with the mere duty of administration, distribution and division of the testator's bounty, and they are given either an estate or power, and it matters not which, precisely adequate to that end, no more and no less.

The statute, so far as it relates to personal estate, is a distinct title, and professes to treat of accumulations and expectant estates only (24 *Wend.*, 662, 663). And it makes every limitation of a future interest, that would have the effect to suspend the absolute ownership for a period longer than is described, void (*Emmons* agt. *Cairns*, 3 *Barb.*, 242 ; *Everett* agt. *Everett*, 29 *N. Y.*; *Kane* agt. *Gott*, 24 *Wend.*). It has no application to this case, for this case concerns a present and vested interest, and not a future and contingent interest (*Manice* agt. *Manice*, 43 *N. Y.*, 368, 369; *Law Reports*, 2 *Eq. Cases*). On the point that death may occur to legatees before actual receipt of the property, cited *Hutchin* agt. *Mannington* (1 *Vesey*, 366) ; *Manice* agt. *Manice; Traver* agt. *Schell* (28 *N. Y.*, 89); *Everett* agt. *Everett* (29 *N. Y.*, 39, 78); 24 *Wend.*, 662, 666.

*Seventh.* Should the direction to the executors not to convert the real estate into personalty for the period of six years be held to be void, it is none the less decisive in favor of the

validity of the will (*Oxley* agt. *Lane*, 35 *N. Y.*, 346 ; *Irvine* agt. *De Kay*, 9 *Paige*, 530 ; 24 *Wend.*, 662 ; *Darling* agt. *Rogers*, 22 *Wend.*, 488 ; 41 *N. Y.*, 341 ; 36 *N. Y.*, 547 ; 35 *N. Y.*, 394).

*Eighth.* There is nothing in the point that the will is void as containing a provision for undue accumulation (*Dodge, Exr.*, agt. *Pond*, 23 *N. Y.*, 69 ; *Rupart Estate*, 1 *Tucker*, 480).

*Ninth.* An injunction cannot issue, because the right upon which it is based is not only doubtful but there is no proof of it at all (*White* agt. *Brownell*, 3 *Abb. N. S.*, 318 ; 4 *id.*, 162 ; *Pidgeon* agt. *Oatman*, 3 *Rob.*, 706 ; *Mott* agt. *Connolly*, 50 *Barb.*, 516 ; *Hartt* agt. *Harvey*, 10 *Abb.*, 321 ; *Durnee* agt. *Odell*, 13 *id.*, 264 ; *Goulding* agt. *Bain*, 4 *Sand.*, 716 ; 1 *Code Rep.* [*N. S.*], 207).

And because the affidavits in support of the title and injunction are not, in respect to any single fact, on knowledge, but every allegation is on hearsay, information and belief (*Ramsey* agt. *Erie Ry. Co.*, 38 *How.*, 193 ; *Heckel* agt. *Mayor, &c., of N. Y.*, 28 *How.*, 211 ; *Bostwick* agt. *Elton*, 25 *id.*, 362 ; *Levy* agt. *Ely*, 15 *id.*, 395 ; *Roger* agt. *Wagstaff*, 11 *id.*, 562 ; *Woodruff* agt. *Fisher*, 17 *Barb.*, 224 ; *Penfield* agt. *White*, 8 *How.*, 87 ; *Minor* agt. *Terry*, 1 *Code R.* [*N. S.*], 384 ; *S. C.*, 6 *How.*, 208 ; *Smith* agt. *Reno*, *id.*, 124 ; *Smith* agt. *Austin*, *id.*, 405 ; *Jones* agt. *Atterbury*, *id.*, 87 ; *Schoonmaker* agt. *Ref. Dutch Church*, 5 *How.*, 265 ; *Krom* agt. *Hogan*, 4 *id.*, 225 ; *Roome* agt. *Webb*, 3 *How.*, 327 ; *Benson* agt. *Fash*, 1 *Code R.*, 50).

A receiver should not be appointed for the same reason, among others, that an injunction should not be granted, both resting upon the same footing (*Blendheim* agt. *Moore*, 11 *Maryland*, 364 ; *Voskell* agt. *Hynson*, 26 *id.*, 83 ; *State* agt. *The Northern Central R. R. Co.*, 18 *id.*, 193 ; *Knight* agt. *Barr*, 19 *id.*, 134 ; *Furlong* agt. *Edwards*, 3 *id.*, 99 ; *Thompson* agt. *Deffenderfer*, 1 *Maryl. Ch. Decis.*, 489 ; *Tomlinson* agt. *Ward*, 3 *Conn.*, 391 ; *Orphan Asylum* agt. *McCartee Hopkins*, 429 ; *Mays* agt. *Rose*, 1 *Freeman's Ch.*, 703 ; *Ladd*

agt. *Harvey*, 1 *Foster*, 514 ; *Maynard* agt. *Baily*, 2 *Nevada*, 313 ; *Jones* agt. *Dougherty*, 10 *Georgia*, 281 ; *Crawford* agt. *Ross*, 39 *Georgia*, 44).

The plaintiff's title must be clear, and there must be fraud or very special circumstances before a receiver will be appointed of rents and profits of real estate (*Chicago, &c.,* agt. *U. S. Co.,* 57 *Pa.,* 83; *Cheever* agt. *Rutland, &c.,* 39 *Vt.,* 653 ; *Baker* agt. *Baker,* 32 *Ill.,* 79; *Haight* agt. *Burr,* 19 *Md.,* 130 ; *Hamilton* agt. *Accessory Trans. Co.,* 3 *Abb.,* 255 ; *Willies* agt. *Corlies,* 2 *Edw. Ch. R.,* 381 ; see *Congdon* agt. *Lee,* 3 *id.,* 304; *Parker* agt. *Moore, id.,* 234; *Carius* agt. *Chabert, id.,* 312; *Huerstel* agt. *Lorrillard,* 7 *Rob.,* 251 ; *Rogers* agt. *Marshall,* 38 *How.,* 43 ; see *Ireland* agt. *Nichols,* 37 *How.,* 222 ; *S. C.,* 7 *Rob.,* 476, *and note to sec.* 455 ; *Thompson* agt. *Sherrard,* 22 *How.,* 155 ; 35 *Barb.,* 593; *People* agt. *Mayor, &c., N. Y.,* 10 *Abb.,* 111; *Greenville* agt. *Fleming,* 2 *J. & L.,* 335 [*Irish Equity*]; cited *Kerr on Receivers,* page 7; *Bates* agt. *Brothers,* 2 *Equity,* 327 ; *Anonymous,* 12 *Vesey,* 4 ; *Howard* agt. *Appera,* 1 *Mad.,* 142 ; *Hawthornthwaite* agt. *Russell,* 2 *Abb.,* 126 ; *Kerr on Receivers, pages* 13, 17, 19 ; *Vrowell* agt. *Reed,* 1 *Hare,* 434 ; *Middleton* agt. *Dodswell,* 13 *Vesey,* 268 ; *Smith* agt. *Smith,* 2 *Y. & C.,* 361; *Witworth* agt. *Whyden,* 2 *Mac. & G.,* 52 ; *Pritchard* agt. *Fleetwood,* 1 *Mer.,* 54 ; *Prebble* agt. *Boghurst,* 1 *Liv.,* 313 ; *Curling* agt. *Lord Townshend,* 19 *Ves.,* 633 ; *Palmer* agt. *Vaughn,* 3 *L. W.,* 173 ; *Talbott* agt. *Hope Scott,* 4 *K. & J.,* 141).

INGRAHAM, *P. J.*—This action is brought for the partition of the real estate of the late John H. McCunn. It is founded on the supposed invalidity of certain trusts in the will, which are claimed to be void or contrary to the provisions of the statute relating to the suspension of the power of alienation.

It is by no means clear that the clause in the will referred to is void. Certainly, the provision for the wife, if by

itself, would not be ; and as that embraces half the estate, that should be preserved if it could be done consistently with the decisions of the courts on this subject, even if the gifts to the brothers are objectionable.

Nor is it any more clear that the directions as to the sale of the property, after six years, is such a limitation of the power of alienation as to render the whole trust void.   Such a provision may be valid as a power of sale merely, and would not destroy the whole intent of the testator in disposing of the bulk of his estate ; but I do not deem it necessary on this motion to decide the questions which have been so ably argued as to the validity of these trusts.   There are other considerations which must control in the decision of this motion.

In actions for the partition of property, the right of the plaintiff to be an owner should be clear to warrant the court to take the custody of the property out of the possession of those having an apparently valid title.   The executors and trustees are vested with that right under the will, while the claim of the plaintiff is doubtful and uncertain.

So far as relates to the personal estate, the present action has no connection therewith, and there can be no order made in relation thereto.

If the trustees appointed by the will are incompetent or improvident, the supreme court, on a proper application, has power to remove them and appoint others to carry out the trust.   No such relief, however, could be given in this action, while the prayer of this application, if granted, would virtually have that effect.   On a proper application to the surrogate, also, the executors may from time to time be compelled to account, and when proper proceedings are taken in this court, an order may be made requiring the proceeds of the estate from time to time to be deposited in some suitable trust company, after making provision to pay the claims against the estate, which seem to be constantly accruing.

With these general remarks as to the propriety of granting

such a motion in such an action, I will examine briefly the affidavits on which this motion is founded.

They are in a great part merely on information and belief as to the conduct of the executors, and the mode of living and family expenses of one of them. Some statements are made apparently on personal knowledge.

In either case, however, the allegations made on the part of the plaintiff, material hereto, are fully and unequivocally denied on the part of the defendants, and the weight of testimony is quite as strong on the one side as the other. There is no propriety in granting the motion on such a state of testimony, nor in trying such a question in this action on conflicting affidavits.

There might, perhaps, be some necessity for it if no other relief existed; but while that may be obtained in various ways, so as to protect the estate from being wasted, I am satisfied this motion should not be granted.

Motion denied with ten dollars costs.