**INTERNATIONAL PAPER CO. v. HUDSON RIVER WATER POWER CO. et al.**

(Supreme Court, Appellate Division, Third Department. March 2, 1904.)

**1. EQUITY—JURISDICTION—ADEQUATE REMEDY AT LAW.**

> Where a company contracted for the purchase of land along a river to develop a water power for use in its mills, it has no adequate remedy at law for a breach of the contract as to certain tracts of the land.

**2. SPECIFIC PERFORMANCE—PLEADINGS.**

> In an action for specific performance or rescission of a contract, a general statement in the complaint that there is no adequate remedy at law is not necessary, where that is manifest from the facts alleged.

**3. SAME—DEFINITENESS OF CONTRACT.**

> Where a company agreed to co-operate with the plaintiff in procuring the title to certain lands, which should then be conveyed to the plaintiff, the contract is sufficiently definite to authorize equitable relief for a failure of the company or its grantee, with knowledge of the agreement, to convey to the plaintiff the title to tracts which the company had acquired.

**4. SAME—PARTIES DEFENDANT.**

Where a corporation agreed to convey to the plaintiff certain tracts of land, a trust company to which the corporation had mortgaged the land to secure a proposed issue of bonds, none of which had yet been issued for value, was a proper party defendant in an action for specific performance.

**5. SAME.**

Where an electric company agreed to co-operate with the plaintiff in procuring the title to lands along a river for the development of water powers —the upper power to be conveyed to the electric company, and the lower power to the plaintiff—and the plaintiff made its deed of the upper power to a trust company, to be conveyed to the electric company on payment by it to the trust company of a certain sum, in an action in equity to compel the electric company to convey to plaintiff certain tracts in the lower power, the trust company, still holding a part of the payment made to it, was a proper party defendant.

**6. SAME—RESCISSION—ALTERNATIVE RELIEF.**

Alternative relief of specific performance or rescission of a contract may be demanded in the same action.

**7. SAME—PARTIES DEFENDANT.**

Where specific performance or rescission of a contract is demanded in the alternative in the same action, one affected by the rescission is a proper party defendant, though he would not be affected by a decree for specific performance.

**8. ACCOUNTING—TENDER OF PERFORMANCE.**

Where, in a suit in equity, the amounts to be paid by either party are uncertain and subject to an accounting, it is enough to offer in the complaint to pay or perform whatever obligations rest on the party bringing the action.

Parker, P. J., dissenting.

Appeal from Special Term, Saratoga County.

Action by the International Paper Company against the Hudson River Water Power Company and others for specific performance or rescission of certain contracts. From an interlocutory judgment overruling a demurrer to the complaint, defendants Hudson River Water Power Company and others appeal. Affirmed.

The plaintiff's complaint is very long. The following is a summary of the allegations thereof, so far as material on this appeal:

The plaintiff in or about February, 1898, became the owner of certain pulp and paper mills situated at Glens Falls and Ft. Edward, N. Y., and elsewhere, and, for the purpose of enabling it to develop a water power for use in connection with its mills at Glens Falls and Ft. Edward, it also purchased various properties and river rights scattered along the Hudson river between a point south of Sherman's Island and the south boundary of property formerly owned by the Hudson River Pulp & Paper Company at Palmers Falls, N. Y., which property of the said Hudson River Pulp & Paper Company was also conveyed to the plaintiff. The various properties and river rights of the plaintiff's predecessor in title had been purchased largely through the agency and assistance of one Ashley.

Thereafter the plaintiff purchased from other persons properties and river rights along said river, and attempted to obtain title to all property and river rights which it deemed necessary for the full development of the water power between the points named. During the times aforesaid the plaintiff discovered that the defendant the Kanes Falls Electric Company and said Ashley had acquired and were attempting to acquire other properties along said river in hostility to the plaintiff. Negotiations thereupon ensued, which resulted in a contract, dated the 1st day of May, 1899, between the plaintiff and the defendant Kanes Falls Electric Company, which contract recites that the parties thereto are respectively the owners of, or that they control by agreement to purchase

or otherwise, in their own names, or in the names of other persons representing them, various properties adjoining the Hudson river between the points mentioned, and that the parties had agreed to co-operate in purchasing and acquiring all the properties between the said points necessary for the full ownership, development, and protection of all power which can be developed between said points, and to complete the titles to said properties, and divide said properties, together with the costs thereof, between the parties thereto, in certain specified proportions. Said contract then provides for co-operation between the parties thereto in securing the titles to all of the properties not then owned by them, or one of them, or by persons representing one of them, at the lowest cost possible, so as to obtain and complete the titles to all of said properties, and for sharing in the costs thereof as in and by the contract provided. And said contract also provides for the conveyance to the Kanes Falls Electric Company of that part of the property along said river front in said contract specified and known as the "Upper Power," and for the conveyance to the plaintiff of that part of the property along said river front in said contract specified and known as the "Lower Power." And said contract also provides that the titles to said properties shall be completed as soon as possible, and that conveyances thereof shall be made not later than August 1, 1899, and that, if the title to any of said properties shall not be fully perfected by August 1st, it shall be completed thereafter as soon as possible, at the joint expense of the parties thereto, to be divided between them in the proportions in said contract provided. And said contract also provides that several of the properties which will form portions of each power when fully assembled stand, either in title, or by option of purchase, in different persons, for the benefit of said paper company, and that it is the intention of the agreement that persons holding the same shall at once convey the same, and the options then existing in favor of the paper company or of the electric company, or of any one for their benefit, shall be completed, with a view of fully completing the entire title to all the properties, in order that the same may be divided as in the contract specified. Said contract was made nominally with the Kanes Falls Electric Company, but the negotiations were had with said Ashley, the president of said company. That the Hudson River Electric Company and the Hudson River Water Power Company were thereafter organized by said Ashley, and the stock is substantially owned and controlled by him. The parties to the contract had not acquired all of the properties upon said river, and were not ready to exchange deeds therefor on August 1, 1899, and the time so to do was extended. In November, 1899, the parties to the contract had acquired all the properties connected with the upper power, and the greater portion of the properties connected with the lower power. At that time the defendant the Hudson River Water Power Company had been organized with Ashley as the president thereof, and it and said Ashley desired to obtain title to the properties connected with the upper power by said contract to be conveyed to Kanes Falls Electric Company, that they might be conveyed to said Hudson River Water Power Company. The money required for purchasing said properties had been chiefly, if not entirely, advanced by the plaintiff.

Upon request, a further contract was made between said Kanes Falls Electric Company and the plaintiff, which recited that the Kanes Falls Electric Company is about to deliver to the paper company its deed of the lower power, and that the paper company is about to deliver to the Trust Company of America a deed of the Kanes Falls Electric Company, of the upper power, to be by the trust company held, subject to the payment of $125,000 by the Kanes Falls Electric Company; and it was in said contract further provided that certain properties connected with the lower power were still to be acquired, and that there appeared to be outstanding of record certain mortgages on certain properties upon said river, and that there might be outstanding titles in both of said powers not at the time of making said contract known. It was agreed that the deed from the paper company to the Kanes Falls Electric Company should be delivered to the trust company, and held by it subject to the payment of $125,000, of which $90,000 should be, upon its receipt, paid by the trust company to the paper company, and that the remainder, of $35,000, should be held by the trust company until the accounts between the parties for the properties theretofore acquired and the property thereafter to be acquired in order to complete the said powers should be adjusted in accordance with the contract

of May 1, 1899, and that after said contract the parties should unite in a certificate to the trust company as to a division of said $35,000. It was further agreed that the title should be obtained and completed as speedily as possible of the properties connected with the lower power that had not been acquired.

In pursuance of said contract, and in reliance upon the agreement on the part of said Ashley and the Kanes Falls Electric Company to assist and cooperate with the plaintiff in acquiring the remainder of the properties necessary to complete the lower power, and in the belief that the defendants would carry out such agreement in good faith, the plaintiff executed and delivered on the 9th day of November, 1899, a deed conveying all of the upper power to the Kanes Falls Electric Company, and the Kanes Falls Electric Company thereupon conveyed the same to the defendant Hudson River Water Power Company. That the Hudson River Water Power Company took and received such conveyance with full knowledge of the agreement, and of the obligation resting upon said defendants to co-operate with the plaintiff in acquiring the title to the remaining properties necessary to complete the lower power. The Kanes Falls Electric Company, at the time of the execution of the deed to it, executed a conveyance to the plaintiff of the properties then owned by it, connected with said lower power. Subsequently the parties to said contracts adjusted the accounts between them, and at the time of such adjustment it was agreed that there remained due the Kanes Falls Electric Company from the plaintiff a balance of $634.35. On January 18, 1900, the parties to said contracts united in a direction to the defendant the Trust Company of America to pay over to the Kanes Falls Electric Company $30,000, and authorized it to retain in its hands the sum of $5,000, to be held as security for the repayment of the said Kanes Falls Electric Company's proportion of the cost of the acquisition of the property still remaining to be acquired in order to complete the lower power. The plaintiff thereafter, in consultation with the Kanes Falls Electric Company and said Ashley, and in co-operation with them, proceeded to acquire additional properties necessary to complete the lower power, and complete its title to all of said properties, except to certain properties in the complaint described, which it has been unable to acquire by reason of the fact that the Kanes Falls Electric Company and said Ashley wrongfully, and in disregard and in violation of said contracts, have, through their agent, acquired and conveyed to the Hudson River Electric Company, which last-mentioned company refuses to convey the same to the plaintiff. On April 23, 1901, the Hudson River Electric Company was incorporated. On April 25, 1901, the said properties were by the defendants, in disregard and violation of said contracts, conveyed to said Hudson River Electric Company. On December 18, 1901, the Hudson River Electric Company executed a mortgage to the defendant Morton Trust Company by which it conveyed to said trust company the said properties so connected with the lower power, among others, as security for the payment of certain bonds thereafter to be issued, to an amount not exceeding $3,000,-000. That none of said bonds have yet been actually issued for value. When the properties in the complaint described were acquired by the Kanes Falls Electric Company, the Hudson River Water Power Company, and said Ashley, or either of them, or for account of either of them, the defendants were bound by the said contracts to convey the same to the plaintiff, and the title acquired by them became and was subject to, and impressed with, a trust in favor of the plaintiff. That the Hudson River Electric Company took title to said properties with full notice and knowledge of said contracts, and with full knowledge of said trust and obligation on the part of the defendants named. The Hudson River Electric Company has refused, and still refuses, to make such conveyance to the plaintiff, although the plaintiff has duly demanded the same, and offered to repay to the said defendant the consideration paid by it for the said properties. Said properties are not connected with other properties of the defendants, and they are in no wise essential to their operation. The Kanes Falls Electric Company well knew the whole purpose and intention on the part of the plaintiff in making the contracts mentioned in the complaint, and in executing and delivering the conveyance to the Kanes Falls Electric Company, was to enable the plaintiff to acquire title to the property necessary to a full development of the water power known as the "Lower Power," and that, by reason of the wrongful failure on the part of the Kanes Falls Electric Company and the Hudson River Water Power Company and said Ashley to convey or cause

to be conveyed to the plaintiff the pieces of property described in the complaint, in disregard and violation of the agreement, the principal consideration for the conveyance by the plaintiff to the Kanes Falls Electric Company of the properties connected with the upper power has wholly failed, and plaintiff is entitled to have the deed vacated and set aside on payment of $90,000, received as stated, and on reconveying to it the properties received at the time of the exchange of deeds, and the plaintiff offers to repay the said amount and reconvey said property upon receiving a reconveyance of the properties connected with the upper power from said Kanes Falls Electric Company. All the defendants have, or claim to have, some right, title or interest in or to the said property, but that the said right, title, or interest, if any, is subject and subordinate to the rights of the plaintiff.

The complaint demands judgment: (1) That the court ascertain the cost to the defendant Hudson River Electric Company of the properties described in the complaint. (2) That the Hudson River Electric Company be decreed to convey the properties described in the complaint to the plaintiff upon payment by the plaintiff of its proportion of the sums actually paid therefor. (3) That the Kanes Falls Electric Company be required to pay the remainder of the amount so paid for said properties. (4) That the amount so paid by the plaintiff and by the Kanes Falls Electric Company be paid to the Morton Trust Company, and that said trust company, on receipt of said amounts, be required to execute and deliver to the plaintiff a release of said properties from the lien of their said mortgage. (5) That in lieu thereof the defendants the Hudson River Water Power Company and the Trust Company of America, as trustee, be decreed to reconvey to this plaintiff all the property connected with the "Upper Power," so called, conveyed to the Kanes Falls Electric Company by this plaintiff by the said deed dated November 9, 1899, upon the payment into court by this plaintiff of said sum of $90,000, with interest thereon, and the conveyance by it to the defendant the Kanes Falls Electric Company of such properties as had been acquired by it prior to the making of said deed. (6) For such other relief as may be just and proper in the premises.

Each of the appellants separately demurred to the complaint on two grounds: (1) That it does not state facts sufficient to constitute a cause of action against the defendant demurring. (2) That causes of action are improperly joined in the action.

The issues of law joined by the service of the demurrers were tried, and an order was entered overruling the demurrers, upon which order interlocutory judgments have been entered.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Hand & Hale, for appellant Hudson River Water Power Co.
Winthrop & Stimson, for appellant Morton Trust Co.
George E. Mott, for appellant Trust Company of America.
Richard Lockhart Hand, for other appellants.
Bell & Wait (Lewis E. Carr, of counsel), for respondent.

CHASE, J. In an action for specific performance, all persons having or claiming an interest in the land derived from the vendor after the contract, and with notice thereof, are necessary defendants in a suit brought by the vendee or his representatives. Pomeroy on Contracts, Specific Performance (2d Ed.) § 493. This is an action in equity. The equitable doctrines with respect to parties and judgments are wholly unlike those which prevailed at the common law—different in their fundamental conceptions, in their practical operation, in their adaptability to circumstances, and in their results upon the rights and duties of litigants. The governing motive of equity in the administration of its remedial system is to grant full relief, and to adjust in the one suit the rights and duties of all the parties which really grow out of,

or are connected with the subject-matter of, that suit. Its funda-
mental principle concerning parties is that all persons in whose favor
or against whom there might be a recovery, however partial, and also
all persons who are so interested, although indirectly, in the subject-
matter and the relief granted, that their rights or duties might be affect-
ed by the decree, although no substantial recovery can be obtained
either for or against them, shall be made parties to the suit. The
primary object is that all persons sufficiently interested may be before
the court, so that the relief may be properly adjusted among those
entitled, the liabilities properly apportioned, and the incidental or
consequential claims or interest of all may be fixed, and all may be
bound in respect thereto by the single decree. Pomeroy's Equity
Jurisprudence (2d Ed.) § 114. It has always been held as a general
rule in equity that all persons materially interested either legally or
beneficially in the subject-matter of a suit are to be made parties to it
so that there may be a complete decree which shall bind them all.
Townsend v. Bogert, 126 N. Y. 370, 27 N. E. 555, 22 Am. St. Rep.
835. It is not essential, in a suit in equity, that all the parties should
be interested in the same way, or affected alike by the judgment de-
manded. It is proper to unite all the parties interested, to avoid a
multiplicity of suits, and have an adjudication that will determine the
question as to all parties interested in the subject-matter. This has
been and is the practice in equity actions. Hall v. Gilman, No. 1, 77
App. Div. 458, 79 N. Y. Supp. 303. A party demurring to a pleading
admits the facts alleged in such pleading, and, in considering the
pleading, it should be held to allege all facts that can be implied from
the allegations by reasonable and fair intendment. Sage v. Culver,
147 N. Y. 241, 41 N. E. 513.

By the demurrers herein, the demurring defendants have admitted,
among other things, that the plaintiff, in purchasing the properties and
river rights which it purchased prior to February, 1898, between the
points named on the Hudson river, did so for the purpose of develop-
ing a water power for use in connection with its mills and other prop-
erty; that the defendant Kanes Falls Electric Company acquired vari-
ous properties between the said points on the Hudson river in hostility
to the plaintiff, and that such antagonistic holdings of property and
water rights so affected their respective schemes for the development
of water power that it caused the plaintiff and said Kanes Falls Elec-
tric Company to enter into a contract to co-operate in dividing the said
properties, and in obtaining such other properties as were deemed
necessary in the interest of each, and that each might obtain and hold
severally the properties and water rights necessary to a complete water
power, each independent of the other; that the properties to complete
the upper power, which, by the terms of the contract, were to be con-
veyed to the Kanes Falls Electric Company, were first obtained, and,
on request, they were conveyed to it without waiting to obtain all the
properties to complete the lower power, which were to be conveyed to
the plaintiff, and a further agreement was entered into on the part of
the Kanes Falls Electric Company, upon which the plaintiff relied,
that said Kanes Falls Electric Company would continue to co-operate
in obtaining the title to the properties not then conveyed to the plain-

tiff in accordance with the terms of said contracts; that the defendants the Hudson River Water Power Company and the Hudson River Electric Company knew of said agreements, and the terms thereof, and the reason why the same were executed, and in part performed; that the president of the Kanes Falls Electric Company is the president of the Hudson River Water Power Company, and said companies, acting through said president, either directly or indirectly, obtained titles to the properties specifically described in the complaint, and transferred or caused the same to be transferred to the Hudson River Electric Company, which company received the same with full knowledge of the said agreements, and all the circumstances connected with the execution thereof and of the consideration therefor, and that such company refuses to convey the same to the plaintiff; that the properties so conveyed to the Hudson River Electric Company are essential to the development of power for the benefit of the plaintiff, and for carrying out the purpose for which the contracts were executed; that the failure to obtain such title prevents the carrying out of the purpose of the execution of the contracts, and destroys the principal consideration therefor. From the situation of the pieces of property specifically described in the complaint, the consideration and reason for executing said contracts, and in partially performing the same, and the essential character of said pieces of property in carrying out the purposes of the plaintiff, it is apparent that money damages would not be as complete and beneficial to the plaintiff as relief in equity, and that there would be serious, if not insurmountable, obstacles in attempting to estimate in money the plaintiff's damage if it fails to obtain title to pieces of property which are essential to it in completing the water power designated as the "Lower Power." The properties mentioned in the complaint are essential links in a chain, the value of which as a chain depends entirely upon those particular links being included and used therewith. The Kanes Falls Electric Company obtained every benefit secured to it under said contracts, while the plaintiff seems to have been deprived of the only real consideration for their execution. A general statement in a complaint in an action of this character that there is no adequate remedy at law is not essential, where it is manifest from the facts alleged that an action at law would give but an inadequate and imperfect remedy to the party aggrieved. The properties which the plaintiff desires should be decreed to be conveyed to it are specifically and definitely described in the complaint, and other allegations of the complaint admitted by the demurrers show that such properties are necessary for the full ownership, development, and protection of the lower power, as stated in the contracts made by and between the Kanes Falls Electric Company and the plaintiff. The complaint, including said contracts, shows an agreement sufficiently definite to enable the court to grant equitable relief. The time for performing the contracts is not of the essence thereof. We are of the opinion that the complaint contains sufficient on the face thereof to set a court of equity in motion.

The defendant the Morton Trust Company holds as trustee a mortgage given by the Hudson River Electric Company upon properties described in the complaint, among other properties, to secure the payment of bonds to an amount not exceeding $3,000,000; and, while it

is alleged that none of said bonds have been issued for value, the fact remains that the mortgage is outstanding of record, and that bonds may have been issued, although not for value. Such mortgage is an incumbrance affecting the marketableness of the title to said properties, and such mortgagee is a proper party, that the court may determine and protect its rights, as well as the rights of the other parties to the action.

The defendant the Trust Company of America is the corporation to which the deed to the Kanes Falls Electric Company was delivered, and which held such deed in escrow pursuant to the terms of the contract under which it was delivered, and subsequently delivered the same to the Hudson River Electric Company. It received the $125,000 from the Kanes Falls Electric Company pursuant to the agreement, and has paid out $120,000 thereof, and still holds $5,000 subject to the direction of the plaintiff and said Kanes Falls Electric Company. No specific relief is asked as against said defendant, but its presence as a defendant will bind it, as well as the other parties to the action, in any relief that may be granted, and in any direction that the court may make in regard to the $5,000 still remaining in its possession.

If the only purpose of this action was to obtain specific performance of the contracts, the Hudson River Water Power Company would not be a necessary or proper party defendant. While the action is for specific performance, it is also brought for a rescission of the contracts, and a reconveyance of the property which has been transferred pursuant to the contracts, if for any reason specific performance thereof cannot be decreed. In an action for the rescission of the contracts, the Hudson River Water Power Company is vitally interested. An action either for specific performance or for the rescission of contracts is distinctly an equitable one. The very foundation of the jurisdiction of equity in either case is the inadequacy of the remedy at law. The evidence in this case will not be changed in any particular by reason of the prayer for alternative relief, except so far as it relates to circumstances affecting the power of the court to decree specific performance. It is said in Encyclopædia of Pleading & Practice, vol. 20, p. 499, "Generally, where the specific performance of a written contract to convey land is denied, a rescission of the contract will be decreed," and the same authority (volume 20, pp. 461, 462) states that a bill may pray for specific performance, or, in the alternative, for a rescission. We can see no reason why such alternative relief should not be demanded in the same action, and why the persons affected by either relief should not be made parties thereto, where the same transactions are to be considered, and the principal part of the proof for the purpose of obtaining either relief is the same.

So far as appears by the record before us, the properties conveyed to the Kanes Falls Electric Company and by the Kanes Falls Electric Company to the Hudson River Water Power Company, as well as all other properties referred to in the complaint, remain in the same situation, and the legal and equitable rights of the parties are the same now, as they were at the time the contracts were made, except so far as they have been changed by the conveyances mentioned. Where, in an action in equity, relief is sought to be obtained, and the amounts to be

paid by either party to the other are uncertain, and subject to an ac-
counting between the parties, it is enough to offer in the complaint to
pay or to perform whatever obligations rest upon the party bringing
the action. Zebley v. F. L. & T. Co., 139 N. Y. 461, 34 N. E. 1067.
The right to specific performance of a contract or its rescission rests
in judicial discretion, and may be granted or withheld upon a con-
sideration of all the circumstances, and in the exercise of a sound dis-
cretion. Winne v. Winne, 166 N. Y. 263, 59 N. E. 832, 82 Am. St.
Rep. 647.

We cannot say as a matter of law that the complaint in this case
should be dismissed for insufficiency as against either of the defend-
ants. The court, after a trial of the issues that may be framed, and a
consideration of any contemporaneous equities or equities arising by
reason of subsequent events, can grant such relief as may be dictated
by a sound discretion, or dismiss the complaint as to all or any of the
parties defendants.

The interlocutory judgments should be affirmed, with one bill of
costs to the respondent. All concur, except PARKER, P. J., dis-
senting. SMITH, J., concurs in result.